John A. Meaden v. W. J. Anderson Corporation et al.

Marie F. Cullerton, Administratrix of Estate of John F. Cullerton, Deceased, Appellee, v. W. J. Anderson Corporation et al.

Appeal of Dillwyn M. Bell, Appellant.

Gen. No. 40,640.

Opinion filed October 23, 1939.   Rehearing denied November 6, 1939.

JOSEPH S. GRANT, of Chicago, for appellant; HENRY W. KENOE, of Chicago, of counsel. .

HARRY A. BIOSSAT, of Chicago, for appellee.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

By this appeal Dillwyn M. Bell seeks to reverse an order entered November 17, 1938, committing him to the county jail of Cook county until he pays $24,500 to Marie F. Cullerton, administratrix of the estate of John F. Cullerton, deceased, or until he be otherwise discharged.

The record discloses that February 2, 1937, a decree was entered in two causes that had been consolidated. In one of the suits John A. Meaden sought by means of a creditor's bill to enforce a judgment against W. J. Anderson Corporation, Dillwyn M. Bell, and others. The other suit was brought by John F. Cullerton, who subsequently died intestate, and his administratrix was substituted as plaintiff.

By a decree the suit brought by Meaden was dismissed for want of equity and in the suit brought by Cullerton it was decreed that Bell "deliver and turn over to the plaintiff, John F. Cullerton" $24,500 "within thirty days . . . and in default of the payment" Bell was ordered to "show cause to this Court why he should not be attached for contempt of this Court for failure to turn over and deliver" the $24,500. The court reserved jurisdiction to enforce its order against Bell.

May 4, 1938, 15 months after the decree was entered, the administratrix filed her verified petition for a rule on Bell to show cause why he should not be attached "for failure to turn over and deliver" the $24,500. The petition set up the entry of the decree during the lifetime of John F. Cullerton, and alleged that the "decree provides that certain property described in said decree was in the possession" of Bell, that Bell wrongfully disposed of it and that his conduct in this respect was intentional and wilfully fraudulent, in that Bell intended to cheat and defraud Cullerton of his interest in the property described in the decree; that in the decree it was ordered that Bell "deliver and turn over" to Cullerton $24,500 within 30 days, and should he default that he show cause why he should not be attached for contempt.

The administratrix further alleged in her petition that Bell failed and refused to turn over the $24,500 or any part thereof, and prayed that an order be entered requiring Bell to show cause why he should not be attached for contempt. Afterward Bell filed his amended verified answer in which he admitted the entry of the decree of February 2, 1937, and denied that the property described in the decree and mentioned in the petition of the administratrix was in his possession and denied that he wrongfully disposed of it; denied that he wrongfully and intentionally defrauded Cullerton; averred he had no knowledge that

the decree had been entered against him until he was served with a copy of the petition of the administratrix.

It is further alleged in the answer that while the principal case was on hearing before the master to whom it had been referred, defendant's counsel withdrew from the case by order of court and thereafter defendant was not represented by counsel and that he was never served with any notice after the withdrawal of his counsel and did not know that proof was being taken before the master; that he did not know that the decree had been presented to court and had no knowledge of any steps taken in the case after the withdrawal of his counsel; that the subject matter of the cause was also involved in a suit then pending in the United States District Court and that defendant was under the impression the two suits which had been consolidated in the superior court had ended by virtue of what took place in the federal court, and he therefore took no steps to engage counsel; that in the decree entered in the consolidated cause the court found that defendant used the money to pay off the debts of the corporation mentioned in that proceeding, and that the money was not used by defendant for his own personal use or invested in any other enterprise other than that which had been agreed upon by the parties; that at the time of the entry of the decree, and since, defendant did not have the $24,500 or any part thereof, nor did he have any means whatever with which to pay the $24,500 and had no money or property of any kind with which to pay any part of that amount; that the only property he had was certain personal property such as clothes and a few other items of personal property; that he had a contract whereby he was to be paid a commission for selling certain property but was unable to earn any substantial sum from this contract.

The court heard the matter on the petition and answer, found that Bell had not shown cause why he

should not be attached for contempt, and he was committed to jail, as above stated.

Although no evidence was taken on the hearing, there was a colloquy between court and counsel and defendant Bell said: "I proceeded as far as I could in the case. [The business deal involved between Cullerton, Bell and others in regard to property located in Indiana.] I didn't have a dollar in the world and every dollar I received from Mr. Cullerton I paid into the company. I didn't take one penny of it. On the transactions they are talking about, I didn't appropriate one penny of it. This is the case, your Honor, that because I didn't discover my rights I couldn't go any further." The court took the position that all matters had been adjudicated by the decree, and that Bell having failed to comply with its terms and having failed to show any cause why he did not so comply, there was nothing to do but commit him to jail.

Neither the pleadings nor the evidence in the consolidated cause is in the record, but the decree entered in that cause is before us; from the decree it appears that Bell was interested in a corporation at LaPorte, Indiana, which was engaged in the business of manufacturing locks, etc.; there were two chattel mortgages on the property, one for $20,000 and one for $21,500, held by two different concerns; that negotiations were had between the company and its creditors in an endeavor to induce them to accept and apply payments out of the profits toward payment of such indebtedness.

The decree further found that there was an agreement between the Anderson corporation and the Automatic company, which was involved in a suit in the United States District Court, and under a decree of that court the property was sold by the sheriff to the Automatic company and the proceeds applied toward the indebtedness to the Finance company. It

was further found by the decree that John F. Cullerton entered into negotiations with the defendant Bell; that Bell dominated the Indiana companies and represented to Cullerton that the company manufactured locks and had a valuable business but was in financial difficulty; that if Cullerton would advance approximately $25,000 to liquidate the obligations of the Lock company the basic patents under which the Lock company operated would be assigned to a holding company in which Bell would have 51 per cent and Cullerton 49 per cent of the stock; that pursuant to the agreement between Cullerton and Bell, Cullerton advanced "$24,500 which was used to pay the indebtedness of the Lock company . . . so that the property of the Lock company could be turned over to the new corporation in which he was to hold stock"; that neither Bell, the Lock company nor the other corporation made any effort to comply with the agreement but entered into another agreement with another concern which prevented the performance of the agreement with Cullerton; "that the procuring of the money from Cullerton was fraudulent on the part of" Bell and the other two companies; "that they never intended to carry out the agreement."

The decree further found that the contract could not be specifically performed; that "all of the property was held in trust by the defendant for the benefit of Cullerton to the extent of the money that he advanced; that the defendant represented to Cullerton that the sum of $24,500 would pay all the liabilities" of the two companies; that "the defendant became a trustee of the property as between himself and Cullerton," and that the subsequent turning over of the property to one of the companies was a fraud upon the rights of Cullerton; "that said conduct was wilfully fraudulent and intended to cheat and defraud Cullerton." And it was decreed that Bell pay Cullerton $24,500 within 30 days, etc.

Imprisonment for contempt as in the instant case is civil in its nature. What Bell was ordered to do by the decree was for the benefit of Cullerton and the dignity of the court is only incidentally involved. *Wilson v. Prochnow,* 359 Ill. 148. Sec. 12 of article 2 of the constitution of this State provides that ''No person shall be imprisoned for debt, unless upon refusal to deliver up his estate for the benefit of his creditors, in such manner as shall be prescribed by law, or in cases where there is a strong presumption of fraud.'' And in *Tudor v. Firebaugh,* 364 Ill. 283, the court in construing this provision of our Constitution said (p. 288): ''In the enforcement of this constitutional provision every doubt should be resolved in favor of the liberty of the citizen. No one should be imprisoned for a failure to pay money unless the evidence clearly shows that the party charged has the money within his power to pay, or that he had the money and wrongfully disposed of it. Courts may imprison for willful defiance, but they will not imprison for a failure to comply with a decree where the disobedience is not willful.'' Citing a number of Illinois cases.

In the instant case there is no finding in the decree, which is the basis of the contempt proceeding, that Bell had the $24,500 or any part thereof in his possession, but on the contrary the decree specifically found that ''a large portion of the money advanced by Cullerton was used in paying the indebtedness of the Bell Lock Company and of W. J. Anderson Corporation, so that the property and patents owned by the Bell Lock Company and the said Anderson Corporation might be turned over to the reorganized corporation in which Cullerton was to have stock.'' From this it appears that Bell used a large portion of the money as authorized by Cullerton to do, and the fact that afterward the property was sold by the sheriff by virtue of one of the chattel mortgages indicates that Cullerton's money was not lost through the fraud of

Bell. At least the decree is subject to such construction, and therefore we would not be warranted in finding that Cullerton lost his $24,500 through fraud on the part of Bell. It must clearly appear from the decree that Bell was guilty of defrauding Cullerton before he could be committed to jail as for a contempt for failure to pay the $24,500. As said in the *Tudor* case, "every doubt should be resolved in favor of the liberty of the citizen," in the enforcement of our constitutional provision. Under such circumstances, inability to pay the amount mentioned in the decree is a good defense to a contempt proceeding brought for the benefit of one of the parties to the decree. *People v. LaMothe,* 331 Ill. 351; *Tudor v. Firebaugh,* 364 Ill. 283; *Herrington v. Cassem,* 82 Ill. App. 595; *Littlefield v. Adel,* 151 Ga. 684; *Dodson v. Butler,* 101 Ark. 416 (39 L. R. A. (N. S.) 1100); *Adams v. Haskell & Woods,* 6 Cal. 316 (65 Am. Dec. 517).

Moreover, we think the order appealed from is erroneous for the reason that defendant in his amended answer, which was verified, swears that while the case was on hearing before the master his attorney withdrew (as appeared from an order entered by the court) and that thereafter defendant was not represented by any counsel and was given no notice of any further hearing or other proceedings taken in the matter. Obviously, after his counsel withdrew of record defendant was entitled to be notified of any further steps taken. Defendant in his answer further swears that neither at the time of the entry of the decree in the consolidated cause nor at any time thereafter did he have any part of the $24,500 in his possession.

The order of the superior court appealed from is reversed.

*Order reversed.*

MATCHETT, P. J., and McSURELY, J., concur.